Paul M. STORMENT, Plaintiff,

v.

Roza GOSSAGE, and Hutnik and Gossage, an express or implied partnership, Defendants.

No. 92–3069.

United States District Court,
C.D. Illinois,
Springfield Division.

April 29, 1992.

Paul Storment, Jr., Storment & Read, Belleville, Ill., for plaintiff.

Melroy B. Hutnick, Belleville, Ill., Robert W. Schmieder, Sr., East Alton, Ill., for defendants.

## OPINION

RICHARD MILLS, District Judge:

Most regrettably, an attorney who upheld her ethical obligations under the Illinois Rules of Professional Conduct is being relentlessly and senselessly persecuted by one who has not.

This case represents one of the most OUTRAGEOUS examples of attorney misconduct and abuse of the judicial process that this Court has ever seen.

This cause is before the Court on Plaintiff's motions to remand, to strike and for attorney's fees under Fed.R.Civ.P. 11, and on Defendant Roza Gossage's motion for summary judgment pursuant to Fed. R.Civ.P. 56.

## I. FACTS

A. The Incident

The plaintiff—Paul Storment—was the attorney for Ms. Deborah Granger in a marriage dissolution and child custody case in the circuit court of St. Clair County, Illinois. Numerous hearings had been held in this matter which were tape-recorded by the court with the parties consent (in lieu of a court reporter). On January 5, 1989,

the circuit court entered judgment dissolving the marriage between the Grangers, awarding custody to Mrs. Granger and denying the parties post trial motions.

Defendant Roza Gossage, a lawyer, was hired to handle the appeal by Ms. Granger's husband, Donald Granger. With the permission of the circuit court's Chief Judge, Ms. Gossage listened to the audio tapes of the hearings for the purpose of determining whether there was any basis for an appeal. One of the tapes she reviewed was of a hearing conducted on March 19, 1988. During this hearing, a man named Moody testified that Ms. Granger had given the parties' infant child a wine cooler and that the he and Ms. Granger had sexual relations in the "Camelot Inn" motel while the child was on a bed next to them. After Moody's testimony, Attorney Storment asked for a recess.

During the recess, everyone cleared the courtroom with the exception of Storment and Ms. Granger who remained at the table in front of an unconcealed microphone. The audio equipment remained on and recorded the conversation between these two. The jist of the conversation was that Storment urged his client to commit perjury by denying Moody's story. *In re Marriage of Granger*, 197 Ill.App.3d 363, 143 Ill.Dec. 651, 554 N.E.2d 586, 594 (5th Dist.1990); *Storment v. O'Malley*, 938 F.2d 86 (7th Cir.1991). Based upon this recorded conversation, Ms. Gossage requested, *inter alia*, a new trial—which was granted.

After the divorce proceedings concluded, the presiding judge, Judge Sheila O'Brien, sent a letter to the Illinois Attorney Registration and Disciplinary Commission (ARDC) together with copies of the tape transcripts. *Storment*, at 88. An investigation was conducted and the case was referred to the Illinois ARDC Inquiry Board, resulting in a formal complaint being filed with the Hearing Board of the ARDC. *Storment*, at 88. Storment filed a Motion to Enjoin the Proceedings of the ARDC in the United States District Court for the Central District of Illinois. Judge Baker refused to enjoin the ARDC proceedings on the doctrine of abstention, and on appeal the Seventh Circuit affirmed. *Storment v. O'Malley*, 938 F.2d 86 (7th Cir. 1991).

While the ARDC was performing its task, the St. Clair County State's Attorney's office filed criminal charges against Storment. *People v. Storment*, No. 90–CF–1001 (Circuit Court for the Twentieth Judicial Circuit, St. Clair County, Illinois). Storment filed a Motion to Suppress the the taped conversations and it was granted. The state's attorney appealed and the Illinois Supreme Court entered a one-line order vacating the trial court's order of suppression. Subsequently, the trial judge vacated his original order stating that the Illinois Supreme Court must have concluded that: 1) Plaintiff did not have an expectation of privacy concerning his conversation with Ms. Granger; and 2) the Illinois Eavesdropping Statute did not apply. *People v. Storment*, No. 90–CF–1001, Order of March 27, 1991. The trial judge also determined that the Federal Eavesdropping statute did not apply to suppression of the evidence, however, he did not comment on the availability of civil remedies. Order of March 27, 1991, at 5–6.

Apparently, Attorney Storment took this as an invitation for even more litigation and brought suit against Ms. Gossage and Hutnik and Gossage, which Storment contends is an implied partnership, in the Circuit Court for St. Clair County for violations of Ill.Rev.Stat. ch. 38, ¶¶ 14–1—14–6 (1989) and 18 U.S.C. § 2520. Storment seeks compensatory and punitive damages in excess of $10,000,000.

Defendants filed a notice of removal to the District Court for the Southern District of Illinois. The judges in the southern district recused themselves and consequently this case was transferred to this Court.

B. The Pleadings

In response to the notice of removal, Storment filed a motion to remand on the grounds that the implied partnership of Hutnik and Gossage under Ill.Rev.Stat. ch. 106½, ¶ 16, destroyed diversity. He imputes a partnership relationship between

Ms. Gossage and Mr. Melroy Hutnik because of their letterhead which appears as follows:

Hutnik and Gossage

Attorneys and Counselors at Law

209 South Jackson Street

Belleville, Illinois 62221

Defendants contend in their response to the motion to remand that the entity of Hutnik and Gossage is nonexistent because they are neither express or implied partners. Rather, Defendants assert that Ms. Roza Gossage and Mr. Melroy Hutnick are attorneys who share an office and do not: 1) have any kind of partnership agreement; 2) share fees; 3) keep joint accounts; 4) have a joint accounting system; 5) share bills; 6) share files; or 7) employ the same staff. Defendants also state that a similar action was attempted in the Southern District of Illinois with Ms. Granger as the plaintiff and that Judge Beatty granted a motion to dismiss the nonexistent entity of Hutnik and Gossage.

In his reply to Defendants' response, Storment reasserted that Hutnik and Gossage is an implied partnership by virtue of their letterhead and because "it [was] noteworthy ... that when rumors that a lawsuit may be filed by the Plaintiff became prevalent, Hutnik and Gossage changed their sign outside their law office from the way the letterhead was written to a separated Melroy Hutnik, Attorney at Law, and Roza Gossage, Attorney at Law." This conduct prompted Storment to pose the question, " 'If their conduct in having a combined sign would not lead a reasonable person to believe that they were a partnership, why did they change the sign?' " In addition, Storment stated that the Southern District correctly found that Hutnik and Gossage was not a professional corporation; however, it did not address the implied partnership question.

The not so subtle innuendo in Storment's reply received a scathing response from Defendant Roza Gossage. In her supplemental response, Ms. Gossage questioned Storment's judgment, common sense, ability to understand English, motives and veracity.

Naturally, Storment was compelled to respond to Ms. Gossage's unfavorable personal characterizations. He filed a motion to strike the supplemental response and for Rule 11 sanctions contending that it contained degrading and wholly unprofessional language and that it was filed in order to harass him.

## II. ANALYSIS

### A. Motion to Remand

■ The federal courts have original jurisdiction over all civil actions arising under the laws of the United States and those between citizens of different states where the amount in controversy exceeds $50,000. 28 U.S.C. §§ 1331, 1332. Under 28 U.S.C. § 1367, a district court shall have supplemental jurisdiction over state claims which are so related to the action within the court's original jurisdiction that they form part of the same case or controversy.

Counts III and IV allege that Defendants violated 18 U.S.C. §§ 2510, 2511 and 2520. Because Plaintiff has brought his civil suit pursuant to federal law, this Court has original jurisdiction over Counts III and IV under 28 U.S.C. § 1331.

Counts I and II are based upon identical facts and allege that Defendants violated Ill.Rev.Stat. ch. 38, ¶¶ 14–1—14–6. Therefore, this Court also has supplemental jurisdiction over Counts I and II because they are so related to the counts within this Court's original jurisdiction that they form part of the same controversy. Consequently, this Court does not need to address Storment's implied partnership theory because its jurisdiction is not based upon diversity of citizenship.

### B. Motion to Strike and for Rule 11 Sanctions

■ Storment asserts that Ms. Gossage's supplemental response should be stricken under Fed.R.Civ.P. 12(f) and that she should be sanctioned under Rule 11 and Illinois Rules of Professional Conduct 3.3(9). Rule 12(f) allows the court to strike

any pleading that is impertinent or scandalous. Rule 11 provides for sanctions against an attorney who files a pleading that is not grounded in existing fact or filed for an improper purpose. Illinois RPC 3.3(9) states that a lawyer shall not "intentionally degrade a ... person by stating or alluding to personal facts concerning that person which are not relevant to the case[.]"

The Court notes that people who live in glass houses shouldn't throw stones. Storment's language in his reply to the motion to remand clearly fails to meet the standards for professional conduct enunciated in RPC 3.3(9). His accusation that Defendants tried to conceal the alleged existence of a partnership by changing the sign outside of their office is a fine example of alluding to personal facts which are not relevant to the case in view of the fact that Defendants changed their sign, well before Plaintiff began this vendetta, for unrelated reasons.

As for Ms. Gossage's supplemental response which accused Storment of having a series of shortcomings including lack of good judgment and dishonesty, this Court notes that those unflattering characterizations are not without factual support. In *In re Marriage of Granger*, 197 Ill. App.3d 363, 143 Ill.Dec. 651, 554 N.E.2d 586 (5th Dist.1990), the court stated:

> [Plaintiff] has attempted to ... character[ize] the disputed statements and conversations here [between Plaintiff and Ms. Granger] as a legitimate effort on his part to determine the facts from his client and to formulate a strategy to counter obviously damning testimony from an unexpected, adverse witness. We cannot accept this view. The clear import of those conversations [between Plaintiff and Ms. Granger] and statements is that [Plaintiff] urged his client to commit perjury.... There was nothing subtle or ambiguous about his approach. Indeed, we cannot recall a more blatant disregard for the provisions of Rule 7–102 of the Code of Professional Responsibility, which provides that in his representation of a client, a lawyer shall not 'participate in the creation or preser-

vation of evidence when he knows or when it is obvious that the evidence is false' or 'counsel or assist his client in conduct that the lawyer knows to be illegal or fraudulent.' " [citations omitted].

> [Plaintiff's] violation of the canons of ethics is for other authorities to pursue. We note, however, that in advising his client to lie, [Plaintiff] did more than breach his ethical obligations. He appears to have committed a criminal offense, attempt to suborn perjury. [citations omitted].

*Granger*, 143 Ill.Dec. at 659, 554 N.E.2d at 594.

Although this Court *IN NO WAY CONDONES* slinging mud at other parties—regardless of the truth of the assertions—it finds, in light of the *Granger* opinion and pleadings filed by Storment, that Ms. Gossage did have a factual basis for the statements she made concerning him. Futhermore, as previously noted, Storment initiated the volley of cheap shots when he implied that Ms. Gossage and Mr. Hutnik had improper motives for changing their business sign. Naturally, once Storment made such an accusation, Defendants were entitled to respond. Consequently, this Court cannot find that Ms. Gossage violated Rule 11 or Illinois RPC 3.3(9).

However, this Court must note that if it weren't for the fact that this case will be closed and barred from refiling on the basis of Defendant Roza Gossage's motion for summary judgment, this Court would have stricken Storment's reply to Ms. Gossage's initial response and Ms. Gossage's supplemental response and ordered that new ones be filed. But, for the sake of everyone, including the taxpayer who provides our court systems, this Court wants to end this matter *post haste*. Although it understands the frustration that Attorney Gossage is going through as a result of Storment's OUTRAGEOUS and ATROCIOUS behavior, nevertheless, this Court must caution that it expects and demands that the attorneys who appear before it conduct themselves in a professional manner and not cast aspersions on the characters of

opposing parties when the same point could be made absent such conduct.

### C. Motion for Summary Judgment

Under Fed.R.Civ.P. 56(c), summary judgment shall be granted if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Black v. Henry Pratt Co.*, 778 F.2d 1278, 1281 (7th Cir.1985). The moving party has the burden of providing proper documentary evidence to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine issue of material fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). Unquestionably, in determining whether a genuine issue of material facts exists, the evidence is to be taken in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials of the pleadings, which demonstrates that there is a genuine issue for trial. *Howland v. Kilquist*, 833 F.2d 639 (7th Cir.1987).

#### 1. *Illinois Eavesdrop Law*

The Illinois Eavesdrop law prohibits the use of information obtained through the use of an eavesdropping device without authorization. Defendants contend that the doctrine of collateral estoppel bars Plaintiff from relitigating whether Ms. Gossage violated the Illinois Eavesdrop law.

Collateral estoppel precludes relitigation of an issue of fact or law that was resolved in a prior proceeding. *Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). In deciding whether a prior state court adjudication is given preclusive effect, the district court must apply the preclusion laws of the state in which the previ-

ous judgment was entered. *Migra v. Warren City School Dist. Bd. of Ed.*, 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984); *LaBoy v. Zuley*, 747 F.Supp. 1284 (N.D.Ill. 1990).

Under Illinois law, collateral estoppel is applicable only if: "1) the issue decided in the prior adjudication is identical with one presented in the case under review; 2) the party against whom the estoppel is asserted was a party or in privity with a party to the prior litigation; 3) there has been a final judgment on the merits in the former suit; and 4) the party against whom the collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit." *LaBoy*, at 1287 (citing *Stevenson v. Chicago*, 638 F.Supp. 136, 142 (N.D.Ill.1986)). An issue resolved in a suppression hearing is barred from relitigation in a subsequent civil proceeding if the above criteria are met. *See LaBoy*, at 1286; *Stevenson*, at 141.

The Illinois Supreme Court considered the question of whether the eavesdrop law was violated when Storment and Ms. Granger's conversation was recorded, and subsequently used against him, when it reviewed the order of suppression issued during the criminal proceedings against Storment. Thus, Storment was a party to the original proceeding and cannot argue that he did not have a full and fair opportunity to litigate the issue he now raises. The Illinois Supreme Court concluded that no violation had occurred. Consequently, this Court will not reconsider this same issue because the doctrine of collateral estoppel bars Storment from once again beating this dead horse.

#### 2. *Federal Electronic Communications Privacy Act*

The federal Act provides for civil action for damages against a person who violates it. Section 2520(2)(d) states that it shall be a defense if the person allegedly in violation of the law acted in a good faith reliance on a court order.

In this case, Ms. Gossage obtained the permission of the Chief Judge of the Twen-

tieth Judicial Circuit of Illinois before listening to the tapes of the Granger marital dissolution hearing. Once she heard the incriminating conversation, Ms. Gossage acted completely appropriately in reporting the contents to Judge O'Brien. From that point forward, Ms. Gossage did not divulge the contents of Storment's conversation to other authorities; rather, Judge O'Brien herself reported Plaintiff to the ARDC and Judge Stephen Kernan advised the St. Clair County State's Attorney. Apparently, since the respective judges who made the damning information public were immune from suit, Storment instead chose to attack Ms. Gossage.

Because Ms. Gossage originally had the court's permission to listen to the tapes and because she was not directly involved in their public disclosure, this Court finds that Ms. Gossage in no way violated the provisions of the Federal Communications Privacy Act. Consequently, Defendant Hutnik and Gossage is entitled to summary judgment on this issue too.

### III. CONCLUSION

This Court finds Storment's persistent finger pointing to be WHOLLY OFFENSIVE. He has no one to blame for his predicament but himself. His conduct in dragging Ms. Gossage into court for no valid legal reason is REPREHENSIBLE. This Court cannot begin to fathom the amount of time that has been wasted by Defendants and the courts, and the financial cost and both personal and professional anxiety suffered by Ms. Gossage at the hands of Storment.

Under Fed.R.Civ.P. 11, a court, upon its own initiative, shall impose an appropriate sanction when it finds that a pleading has no basis in fact or law or has been filed for an improper purpose such as to harass or cause unnecessary delay. This Court finds that this entire lawsuit was instigated in order to harass Ms. Gossage and delay the inevitable before the Illinois ARDC. As previously discussed, Storment had no basis in law or fact to file a suit grounded on the Illinois Eavesdrop Law and Federal Communications Privacy Act.

Twenty five pleadings were filed in this case. Approximately one-half of those were prepared by Ms. Gossage or her attorney, including a very thorough and lengthy motion for summary judgment and supporting memorandum. Consequently, this Court, *sua sponte*, imposes a sanction in the amount of $5,000 against Paul M. Storment in favor of Ms. Roza Gossage. The Court finds that $5,000 is a reasonable figure to compensate Ms. Gossage for the amount of legal services rendered in her behalf and to punish Attorney Storment for his EGREGIOUS behavior in instigating this meritless suit.

*Ergo*, Plaintiff's motion to remand and motion to strike and for Rule 11 sanctions are DENIED.

Defendant Gossage's motion for summary judgment is ALLOWED.

Defendant Gossage's motion for a more definite statement and Plaintiff's motion to strike are DENIED as moot.

This case is DISMISSED WITH PREJUDICE.

Case CLOSED.